IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POSITEC USA INC., a North Carolina
Corporation and POSITEC USA INC., a
South Carolina Corporation,

        Plaintiffs,

   v.

MILWAUKEE ELECTRIC TOOL
CORPORATION,

        Defendant.

C.A. No. 05-890-GMS

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FEDERAL
RULE OF CIVIL PROCEDURE 12(b)(1)**

Dated: January 31, 2006

FISH & RICHARDSON P.C.

William J. Marsden, Jr. (#2247)
*marsden@fr.com*
Sean P. Hayes (#4413)
*hayes@fr.com*
919 N. Market Street
Suite 1100
Wilmington, DE 19801
(302) 652-5070

Alan D. Smith
Lawrence K. Kolodney
Benjamin D. Enerson
225 Franklin Street
Suite 3200
Boston, MA 02110
(617) 542-5070

*Attorneys for Plaintiffs Positec USA Inc.
(South Carolina) and Positec USA Inc. (North
Carolina)*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

I.      NATURE AND STAGE OF THE PROCEEDING ............................................. 1

II.     SUMMARY OF ARGUMENT ........................................................................ 1

III.    STATEMENT OF FACTS ............................................................................... 3

        A.      Positec USA is the Only Positec Company that Imports
                the Accused WORX Circular Saw into the United
                States, and that Sells the Accused WORX Circular Saw
                in the United States ......................................................................... 3

        B.      Milwaukee Actually Charged Positec's WORX Circular
                Saw With Infringing the Patents-in-Suit, and Threatened
                a Patent Infringement Suit Against the Importer of this
                Product Unless Positec "Immediately Ceased" Activities ........................ 4

        C.      Positec USA Feared that Milwaukee Would File a
                Lawsuit, and the Threat of Litigation Would Interfere
                With Positec USA's Sales and Marketing Initiatives ............................... 8

IV.     ARGUMENT .................................................................................................. 10

        A.      Declaratory Jurisdiction is Proper Because Positec USA
                Had a Reasonable Apprehension of Suit, and Engages in
                the Alleged Infringing Activity ........................................................... 10

        B.      Milwaukee's Assertions That Positec USA Could Not
                Have a Reasonable Apprehension of Suit are Without
                Merit ............................................................................................... 15

        C.      Positec USA Has Standing to Bring this Declaratory
                Judgment Action Against Milwaukee .................................................... 18

V.      CONCLUSION ............................................................................................... 18

# TABLE OF AUTHORITIES

Cases

Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,
        846 F.2d 731 (Fed. Cir. 1988)………………………………………11, 12, 15, 16, 17

Capo Inc. v. Dioptics Medical Products, Inc.,
        387 F.3d 1352, 1355 (Fed. Cir. 2004)…………………………………………………11

Deprenyl Animal Health, Inc. v. University of Toronto Innovations Foundation,
        297 F.3d 1343 (Fed. Cir. 2002)…………………………………………………………..13

Ethicon, Inc. v. American Cyanamid Co.,
        369 F. Supp. 934 (D.C.N.J. 1973)..……………………………………………………14

Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,
        269 F. Supp. 2d 1213 (C.D. Cal. 2003)…………………………………………………11

R&P Pools, Inc. v. The New Kayak Pool,[1]
        2001 U.S. Dist. LEXIS 1505 (W.D.N.Y. Feb. 14, 2001)…..……...……….……17

Teva Pharmaceuticals USA, Inc. v. Pfizer, Inc.,
        395 F.3d 1324 (Fed. Cir. 2005)…….……………….……….……....………..16, 17

Vanguard Research, Inc. v. Peat, Inc.,
        304 F.3d 1249 (Fed. Cir. 2002)…………………………………………………… 12

Volkswagen of America, Inc. v. Engelhard Minerals & Chemicals Corp.,
        401 F. Supp. 1210 (S.D.N.Y. 1975)…….…………...….………………..... 14, 15

Statutes

35 U.S.C. § 271(a)……………………………………………………………………13

---

[1]    A copy of this unreported decision is attached to Def.'s Br. Supp. M. Dismiss (D.I. #10).

## I.    NATURE AND STAGE OF THE PROCEEDING

Plaintiffs Positec USA (South Carolina) and Positec USA (North Carolina) (collectively "Positec USA") filed this complaint on December 27, 2005, seeking a declaratory judgment that (1) Positec USA does not infringe three patents owned by Defendant Milwaukee Electric Tool Corporation ("Milwaukee"), U.S. Patent Nos. 6,108,916, 6,301,790, and 6,588,112 (the "Patents-in-Suit"), and (2) the Patents-in-Suit are invalid. On January 17, 2006, Milwaukee filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Federal Rule of Civil Procedure 12(b)(1).

## II.    SUMMARY OF ARGUMENT

Jurisdiction exists in this case because Positec USA had every reason to fear, based on Milwaukee's explicit and unambiguous threats to institute patent litigation, that it would be sued by Milwaukee for importing and selling the WORX Circular Saw in the United States.  In the months before this suit was filed, Milwaukee repeatedly stated that Positec's WORX Circular Saw infringed Milwaukee's United States patents, namely the Patents-in-Suit.  Milwaukee specifically accused the WORX Circular Saw of infringement:

> Based upon our review of the WORX Circular Saw, it is our opinion that at least Claims 1-2, 4, 6, 32-35, 37, and 39-40 of Milwaukee's '112 Patent are infringed by the manufacture and sale of the WORX Circular Saw.

*See* Lawson Ex. 7 at 2.[2]

Not only did Milwaukee charge infringement, Milwaukee also demanded that all "infringing" activity cease or it would be forced to "commence an infringement action":

---

[2]    "Lawson Ex. __" refers to the exhibits attached to the Declaration of Edward R. Lawson Jr., filed in support of Defendant's Brief in Support of its Motion to Dismiss.

1

Your company must **<u>immediately</u>** cease the advertisement, offering for sale, sale, use and manufacture of these infringing WORX Circular Saws and other substantially similar infringing circular saws or power tools.  We expect confirmation that your company has indeed ceased infringement of Milwaukee's intellectual property rights no later than **<u>December 29, 2005</u>**.  If your company fails to cease its infringing activities, Milwaukee will be forced to commence an infringement action to enforce its intellectual property rights and to stop your company's infringement.

*See id.* at 2–3 (emphases in original).

In the face of such clear evidence, it is telling that Milwaukee's Brief in Support of its Motion to Dismiss chooses to ignore these statements entirely.  Nowhere does Milwaukee's brief quote, acknowledge, or even discuss these statements.  Instead, Milwaukee's brief suggests that it only explained Milwaukee's "position that the [product] appeared to read on" a Patent-in-Suit.  *See* Def.'s Br. Supp. M. Dismiss at 2.  This characterization is misleading and disingenuous at best.

Milwaukee also claims that it never gave Positec USA any reason to be concerned because it merely "corresponded with foreign entities it suspected of manufacturing a product that could involve Milwaukee's patents."   *See* Def.'s Br. Supp. M. Dismiss at 1.  To the contrary, Milwaukee's correspondence specifically accused the ***sale*** of WORX Circular Saws as infringing the Patents-in-Suit, and Positec USA is actively engaged in selling the alleged infringing products in the United States.  Moreover, Milwaukee stated that it would be forced to "commence an infringement action" not only against the manufacturer of the WORX Circular Saw, but also against its "importer."  *See* Lawson Ex. 7 at 2–3.  Positec USA is the only Positec company that imports the accused WORX Circular Saws into the United States.  *See infra* Part III.A.

There is simply no doubt that Milwaukee's express threat to sue the "importer" of the WORX Circular Saw created a reasonable apprehension of suit on behalf of Positec

USA.  As the only Positec company engaged in the allegedly infringing activities, Positec

USA was the obvious target of Milwaukee's threats, and had every justification to seek a

declaration from this Court that it was not a patent infringer.  Because Positec USA had a

reasonable apprehension of suit, and engages in the alleged infringing activity, an actual

controversy exists between Positec USA and Milwaukee.  Declaratory jurisdiction is

therefore proper in this case.

III.    **STATEMENT OF FACTS**

  **A.    Positec USA is the Only Positec Company that Imports the Accused
   WORX Circular Saw into the United States, and that Sells the
   Accused WORX Circular Saw in the United States**

  Positec USA, the plaintiff in this suit, is a subsidiary of Positec Group Limited

("Positec Group"), a Hong Kong company whose subsidiaries (collectively "Positec" or

"Positec companies") manufacture and sell power tools in China.  Duncan Decl. ¶ 1.[3]

Positec USA imports and sells the WORX Circular Saw in the United States.  *Id.* ¶¶ 2 &

4.

  The WORX Circular Saw is manufactured in China by one of the Positec

companies, and Positec USA then acquires title to these saws in China, from whence it

imports them into the United States for resale to retail outlets.  *See id.* ¶ 4.  Positec USA

is the ***only*** Positec company that imports or sells the WORX Circular Saw in the United

States.  *See id*.  Indeed, Positec USA is the only Positec company that conducts ***any***

activity in the United States.  *See id.*  Moreover, at the time this action was filed, it was

the only Positec company that sold the WORX Circular Saw anywhere in the world,

outside of China.  *Id.* ¶ 4.

---

[3] "Duncan Decl. __" refers to the Declaration of Thomas Duncan, submitted herewith.

**B.      Milwaukee Actually Charged Positec's WORX Circular Saw With Infringing the Patents-in-Suit, and Threatened a Patent Infringement Suit Against the Importer of this Product Unless Positec "Immediately Ceased" Activities**

Outside litigation counsel for Milwaukee repeatedly sent threatening letters and emails to two different Positec companies prior to the filing of this lawsuit.  *See* Lawson Exs. 2, 4, 6 & 7.  These letters focused on Milwaukee's United States patents, *see id.*, and therefore the Positec companies' United States activities, which are only carried out by Positec USA.  *See supra* Part III.A.  Milwaukee specifically asserted infringement of the Patents-in-Suit by the importation and sale of the WORX Circular Saw in the United States, which is performed by Positec USA.  *See id.*  Milwaukee not only asserted infringement, however, but also expressly demanded that Positec "immediately cease" the alleged infringing activity or Milwaukee "will be forced to commence an infringement action to enforce its intellectual property rights and to stop your company's infringement."  *See* Lawson Ex. 7 at 2 (emphasis in original).  The threat of a lawsuit included taking legal action to stop sales in the United States (which are made by Positec USA), and to stop the importation of the WORX Circular Saw into the United States unless all alleged infringing activity in the United States ceased.  *See* Lawson Exs. 2, 4 & 7.

Milwaukee sent a letter to Positec Germany GmbH ("Positec Germany") in September of 2005, entitled "WORX Circular Saw and Milwaukee Electric Tool Corporation's Intellectual Property Rights."[4]  *See* Lawson Ex. 2.  Noting that it was the

---

[4]   Notably, each letter was written on the letterhead of outside litigation counsel for Milwaukee, Michael Best & Friedrich, and was signed by Edward R. Lawson, Jr., a partner in this firm. *See* Lawson Decl. ¶ 1; *see also* Lawson Exs. 2, 4, & 7.  The attorneys who charged Positec with infringement are now counsel for Milwaukee in the present litigation.

owner of "U.S. and foreign patents and patent applications directed to many independent features of its circular saw," Milwaukee enclosed a copy of the Patents-in-Suit with the letter. *See id.* After referring to the Patents-in-Suit, Milwaukee asserted that the WORX Circular Saw contains a "feature [that] is proprietary and a valuable property right of Milwaukee," namely "a main handle which is movable relative to the housing." *See id.* Positec Germany replied to the September letter by email, stating that it had already forwarded the letter and the enclosed Patents-in-Suit to Positec Machinery Co. Ltd. ("Positec China"), another Positec company. *See* Lawson Ex. 3.

Shortly thereafter, in October, Milwaukee sent a similar letter to Positec China, despite the fact that Positec Germany had already indicated that Milwaukee's September letter was forwarded to Positec China. *See* Lawson Ex. 4 (noting that it wanted to "ensure that [Positec China] receives this notice").) Enclosed with the October letter was another copy of the Patents-in-Suit. *See id.* After referring to the Patents-in-Suit, Milwaukee once again asserted that the WORX Circular Saw "includes a main handle which is movable relative to the housing." *See id.* This feature, according to Milwaukee, "is proprietary and a valuable property right of Milwaukee." *See id.*

In response to Milwaukee's two letters, Jia Wu, General Counsel for the Positec Companies, emailed counsel for Milwaukee, stating that Positec had read both letters carefully, and that Positec "does not make use of any valid claim of Milwaukee." *See* Lawson Ex. 5. Despite the denial of infringement from Positec, Milwaukee continued to press the matter. Milwaukee replied only a week later, insisting that Positec provide Milwaukee with a reason (1) why the WORX Circular Saw does not infringe the Patents-in-Suit and (2) why the Patents-in-Suit are invalid. *See id.* Milwaukee even insisted that

Positec supply Milwaukee with "engineering drawings, photographs, etc., regarding the construction and operation of the WORX Circular Saw." *See id.* At the end of this email, Milwaukee stated that it "values and ***will enforce*** its intellectual property rights." *See id.* (emphasis added).

On December 15, 2005, Milwaukee became even more aggressive, stating in the strongest possible terms that it had positively concluded there was infringement and that Positec must "immediately cease" the "infringing activities" or Milwaukee would sue for patent infringement. *See* Lawson Ex. 7. Milwaukee compared the WORX Circular Saw to the claims of the Patents-in-Suit, and asserted that the "manufacture and sale of the WORX Circular Saw" infringes "at least Claims 1-2, 4, 6, 32-35, 37, and 39-40 of Milwaukee's '112 Patent." *See id.* at 1–2.

The December letter went far beyond just asserting infringement, however. Milwaukee threatened to file an infringement action based upon the sale, offering for sale, use, and manufacture of the WORX Circular Saw in the United States.

> Your company must **immediately** cease the advertisement, offering for sale, sale, use and manufacture of these infringing WORX Circular Saws and other substantially similar infringing circular saws or power tools. We expect confirmation that your company has indeed ceased infringement of Milwaukee's intellectual property rights no later than **December 29, 2005**. If your company fails to cease its infringing activities, Milwaukee will be forced to commence an infringement action to enforce its intellectual property rights and to stop your company's infringement.

*See id.* (emphases in original). Milwaukee demanded that Positec provide Milwaukee with a basis for non-infringement, or a basis for contending that the Patents-in-Suit are not valid. *See id.* Milwaukee again insisted that Positec China provide it with "the basis for [its] opinion no later than **December 29, 2005**." *See id.* (emphasis in original).

As if propounding interrogatories, Milwaukee also demanded that Positec provide Milwaukee with "a full and complete accounting of any infringing circular saws or power tools manufactured, sold or used in Germany, in the United Kingdom, **or in the U.S.**, including, for each country, an identification of the number of each product manufactured, the number of sales of each product and the sales price of each product." *See id.* (emphasis added). This damages-type interrogatory sought Positec USA's sales numbers for a calculation of damages owed by Positec USA for alleged infringement in the United States. Milwaukee also demanded a "full and complete accounting" of the "total inventory of infringing circular saws or power tools," *see id.*, seeking information from Positec USA for a calculation of alleged infringing saws in the United States.

At the end of the December letter, Milwaukee repeated its threat to file a lawsuit based upon infringement of the WORX Circular Saw, indicating that it intended to sue both the manufacturer *and the importer* of the WORX Circular Saw.

> If your company does not manufacture the WORX Circular Saw and the other substantially similar circular saws or power tools, we insist that you provide to us **immediately** the name, address and contact information of the manufacturer **and of the importer**, if these parties are different, **so that Milwaukee can enforce its intellectual property rights against such parties**.

*See id.* at 2–3 (first emphasis in original). The only Positec company that imports the WORX Circular Saw into the United States is Positec USA. *See supra* Part III.A.

Milwaukee closed the letter by once again asserting infringement of the WORX Circular Saw, and affirmatively stating that it would be forced to take legal action if Positec did not immediately cease all WORX Circular Saw activities:

> Again, we expect your company to **immediately** cease the advertisement, offering for sale, sale, use and manufacture of the infringing WORX Circular Saw and other substantially similar circular saws or power tools.

Also, no later than **<u>December 29, 2005</u>**, we expect confirmation that your company has indeed ceased infringement of Milwaukee's intellectual property rights. Absent a confirmation from you by the deadline, we will be forced to take alternative action.

In closing, you should understand that Milwaukee values and will enforce its intellectual property rights.

*See id.* at 3 (emphases in original).

      **C.**     **Positec USA Feared that Milwaukee Would File a Lawsuit, and the Threat of Litigation Would Interfere With Positec USA's Sales and Marketing Initiatives**

After receiving copies of the aforementioned letters sent by counsel for Milwaukee, Positec USA feared that Milwaukee would file a lawsuit charging Positec USA with infringing the Patents-in-Suit through the importation and sale of the WORX Circular Saw in the United States. Thomas Duncan, President of Positec USA, first became aware of Milwaukee's allegations of infringement in September, 2005, after receiving a copy of the letter sent by counsel for Milwaukee to Positec Germany. Duncan Decl. ¶ 5. Mr. Duncan knew that Milwaukee was accusing the WORX Circular saw of infringing its United States Patent rights. *See id.* ¶ 6. In fact, Mr. Duncan was already familiar with Milwaukee and its parent company, Techtronic Industries Co. Ltd. (Hong Kong), because they are a direct competitor of Positec in the United States market for power tools, and in the past had aggressively enforced their patent rights against other companies in this field. *See id.* Because Positec USA was the only Positec company doing business in the United States, and the only Positec company that was selling the WORX Circular saw outside of China, Mr. Duncan concluded that Milwaukee's allegations made Positec USA a potential target of a patent infringement suit by Milwaukee. *See id.*

Milwaukee's October, 2005 letter to Positec China confirmed Mr. Duncan's suspicions, for after reviewing that letter, Mr. Duncan concluded that Milwaukee was intent on tracking down the Positec company that sold the WORX Circular Saw in the United States so that it could commence a patent infringement action against it. *See id.* ¶ 7.

Mr. Duncan received a copy of Milwaukee's threatening December 15, 2005 letter immediately after it was received by Positec China. *See id.* ¶ 8. In this letter, Milwaukee asserted that the WORX Circular Saw infringed claims of one of Milwaukee's patents, and Milwaukee demanded that Positec pay compensation to Milwaukee for this alleged infringement. *See id.* ¶ 8; *see also* Lawson Ex. 7. Milwaukee also threatened to take legal action against the importer of the WORX Circular Saw. *See* Duncan Decl. ¶ 8; *see also* Lawson Ex. 7. Mr. Duncan knew that a lawsuit to stop the importation and sales of the WORX Circular Saw in the United States would necessarily be a lawsuit against Positec USA. *See* Duncan Decl. ¶¶ 8–10. Recognizing the aggressive tone of the letter, and the specific threats to file a lawsuit, Mr. Duncan became convinced that Positec USA had to take immediate legal action to resolve the issue of whether the WORX Circular Saw infringed any of Milwaukee's patents. *See id.* ¶ 9.

As the President of Positec USA, Mr. Duncan was particularly concerned about the negative effect that Milwaukee's threats of litigation would have on Positec USA's business relations and marketing campaigns, for Milwaukee seemed intent on disrupting the sales of the WORX Circular Saw in the United States. *See id.* ¶¶ 9 & 10. Mr. Duncan knew that Milwaukee's threats of litigation would have an adverse effect on Positec USA's business relations. *See id.* ¶ 10. For example, Mr. Duncan feared that

9

Milwaukee would repeat its accusations of patent infringement to the retail outlets who distribute the WORX Circular Saw, or seek an injunction to prevent future sales of this product, both of which would jeopardize Positec USA's present and future business relations. *See id.* Further, Positec USA was planning on expending significant money and effort on a marketing campaign for the WORX Circular Saw. *See id.* With the threat of litigation, Positec USA would not know whether to continue or delay its ongoing marketing campaigns with respect to the WORX Circular Saw. *See id.* Positec USA wanted to resolve the issue of infringement immediately, without having to wait for Milwaukee to formally file suit against Positec USA. *See id.*

**IV.     ARGUMENT**

> **A.     Declaratory Jurisdiction is Proper Because Positec USA Had a Reasonable Apprehension of Suit, and Engages in the Alleged Infringing Activity**

In its opening brief, Milwaukee fails to apprise the Court of two critical and dispositive facts. First, Milwaukee made express threats to institute patent infringement litigation if Positec did not immediately cease selling the WORX Circular Saw in the United States, and demanded that Positec pay patent infringement damages based on Positec's past United States sales. This fact alone placed Positec USA in reasonable apprehension of suit, as Positec USA is the only Positec company that engaged in such sales.

Second, Milwaukee made it clear in its letters that it intended to enforce its United States patents not only against the particular Positec companies identified in its letters, but against any other Positec companies that were "importers" of the WORX Circular into the United States. This further threat by Milwaukee belies any argument that Positec

10

USA should not have feared being sued since it was not the "manufacturer" of the accused saws.

Because Positec USA is the only Positec company that imports the WORX Circular Saw into the United States, the only Positec company selling WORX Circular Saws in the United States, and the only Positec company subject to jurisdiction of the United States courts, it had every reason to expect that it would be the defendant in the patent litigation that Milwaukee threatened to institute. There is simply no doubt that under these circumstances, an actual controversy exists between Positec USA and Milwaukee, making declaratory jurisdiction proper in this case.

The Declaratory Judgment Act "was intended to afford relief to those victimized by 'scarecrow' litigation," where a "potential plaintiff immobilizes others with the mere threat of litigation." *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 269 F. Supp. 2d 1213, 1225–26 (C.D. Cal. 2003). "The sole requirement for jurisdiction under the Act is that the conflict be real and immediate, *i.e.*, that there be a true, actual 'controversy' required by the Act." *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc*., 846 F.2d 731, 735 (Fed. Cir. 1988).

The Federal Circuit uses a two-part inquiry to determine whether an "actual controversy" exists. "Declaratory justiciability of patent disputes requires both (1) a threat or other action by the patentee whereby the declaratory plaintiff has a reasonable apprehension that he will be sued for infringement, and (2) activity by the declaratory plaintiff that constitutes the alleged infringement or active preparation to conduct such activity." *Capo Inc. v. Dioptics Medical Products, Inc.*, 387 F.3d 1352, 1355 (Fed. Cir. 2004). In this case, the second prong is indisputably met. Positec USA has and

11

continues to engage in activity that Milwaukee asserts infringes the Patents-in-Suit. Positec USA has imported the WORX Circular Saw into the United States, and has sold and offered for sale the WORX Circular Saw in the United States. *See supra* Parts III.A–B.

With respect to the first prong of the inquiry, it is clear that Positec USA had a reasonable apprehension of suit because Milwaukee expressly threatened to sue the importer of the WORX Circular Saw, in this case, Positec USA. The Federal Circuit has called an "express threat of litigation" the "best evidence of a reasonable apprehension." *See Vanguard Research, Inc. v. Peat, Inc.*, 304 F.3d 1249, 1254 (Fed. Cir. 2002). When an express threat of litigation is made, "certainty has rendered apprehension irrelevant, and one need say no more." *Arrowhead*, 846 F.2d at 736.

In its December 15, 2005 letter, Milwaukee was explicit about its intention to "commence an infringement action" directed at the WORX Circular Saw and made it clear that it intended to include importers, such as Positec USA, in the litigation. *See* Lawson Ex. 7 at 3 ("[W]e insist that you provide to us immediately the . . . contact information of the manufacturer and *of the importer*, if these parties are different, so that Milwaukee can *enforce* its intellectual property rights *against such parties*.") (emphases added).[5] Thus, while Milwaukee's letters did not mention Positec USA by name, they made clear that Milwaukee had every intention of pursuing litigation against Positec USA once its identity could be determined.

Even apart from Milwaukee's express threat to sue importers of the WORX

---

[5]   This portion of the December letter belies Milwaukee's assertion that it sought to address "patent issues directly with the manufacturer of the saw." *See* Def.'s Br. Supp. M. Dismiss at 6–8.

Circular Saw, Positec USA had particular reason to consider itself a likely target of Milwaukee's contemplated lawsuit. Positec USA had a reasonable apprehension of suit because it is the only Positec company that is carrying out the alleged infringing activities of selling and offering for sale WORX Circular Saws in the United States. When Milwaukee stated, "the advertisement, offering for sale, sale … of these infringing WORX Circular Saws" "must **immediately** cease" or "Milwaukee will be forced to commence an infringement action to enforce its intellectual property rights," *see* Lawson Ex. 7 at 2–3 (emphasis in original), Positec USA knew it was the target. *See supra* Part III.C.

Stopping the alleged infringing activities could only be accomplished by suing Positec USA because Positec USA is the only Positec company advertising, offering for sale, and selling the WORX Circular Saw in the United States, where Milwaukee's United States patents, *e.g.* the Patents-in-Suit, may be enforced. In order to commit an act of patent infringement, it is necessary to perform acts in the United States. *See* 35 U.S.C. § 271(a) ("[W]hoever makes, uses, offers to sell, or sells any patent invention, *within the United States* or imports *into the United States* any patented invention during the term of the patent therefore, infringes the patent.") (emphasis added). Moreover, a party may be sued in United States District Court only if it has sufficient contacts with the forum such that jurisdiction over that party would not offend "fair play and substantial justice." *Deprenyl Animal Health, Inc. v. University of Toronto Innovations Foundation*, 297 F.3d 1343, 1349–51 (Fed. Cir. 2002). As noted above, Positec USA is the only Positec company that satisfies either of these criteria. Given Milwaukee's letter writing campaign and its clearly stated intention to prevent further sales of Positec's

WORX Circular Saw in the United States, Positec USA was entirely justified in bringing this action.

That Positec USA had a reasonable apprehension of suit based on Milwaukee's correspondence with other Positec companies is confirmed by the decision in *Volkswagen of America, Inc. v. Engelhard Minerals & Chemicals Corp.*, 401 F. Supp. 1210 (S.D.N.Y. 1975).   In that case, Volkswagen's U.S. subsidiary ("VWA") brought a declaratory judgment action against the patentee after the patentee had sent threatening letters to Volkswagen Germany ("VWG").  Like Milwaukee, the defendant in *Volkswagen* argued that VWA, the importer of the accused product, had no standing to sue because it needed to "show threats of infringement made directly to itself" rather than to Volkswagen Germany ("VWG").  *See* 401 F. Supp. at 1213–14.  The court dismissed this notion, stating that

> Indirect, as well as direct, charges of infringement may be sufficient to support a declaratory judgment action challenging the validity of a patent, and certainly any infringement charge against VWG with respect to cars imported into the United States creates a ***very significant risk of suit for VWA***, the wholly-owned subsidiary of VWG and the ***sole importer and distributor of Volkswagens in the United States***.

*Id.* (emphases added).  Relying on communications between the defendant and Volkswagen Germany, the court held that an actual controversy existed between Volkswagen America and the defendant. *See id*. at 1214; *see also Ethicon, Inc. v. American Cyanamid Co.*, 369 F. Supp. 934 (D.C.N.J. 1973) (finding actual controversy because defendant filed suit in Great Britain against plaintiff's sister corporation for infringement of a British patent corresponding to a U.S. patent).

### B. Milwaukee's Assertions That Positec USA Could Not Have a Reasonable Apprehension of Suit are Without Merit

Ignoring its own express threats of litigation, Milwaukee makes two arguments in support of its assertion that Positec USA did not have a reasonable apprehension of suit. Both arguments are without merit. First, Milwaukee argues that Positec USA did not have a reasonable apprehension of suit because it never received any communication directly from Milwaukee. *See* Def.'s Br. Supp. M. Dismiss at 6–8. But, Milwaukee's own brief concedes that "direct communication" from a patentee "is not an absolute prerequisite to declaratory judgment jurisdiction." *See id*. at 6. In fact, it is not a prerequisite at all. *See Arrowhead*, 846 F.2d at 736 ("If the circumstances warrant, a reasonable apprehension may be found in the absence of *any* communication from defendant to plaintiff."); *Volkswagen*, 401 F. Supp. at 1213–14 ("Indirect, as well as direct, charges of infringement may be sufficient to support a declaratory judgment action. . . .").

Second, Milwaukee portrays Positec USA as a mere "customer" of Positec China, and contends that "statements made by a patentee to the manufacturer are not a factor in determining whether the manufacturer's customer has a reasonable apprehension of suit by the patentee." *See* Def.'s Br. Supp. M. Dismiss at 8. However, as described above, Positec USA is not a mere customer of Positec China, Positec Germany, or any other Positec company, but rather is Positec's sole United States presence and the ***only*** Positec company engaging in the alleged infringing activity in the United States. *See supra* Part III.A. It is also the only Positec company that is an "importer" of WORX Circular Saw, and thus the object of Milwaukee's explicit threat to enforce its patent rights.

15

None of the cases cited by Milwaukee remotely supports Milwaukee's argument.

In *Teva Pharmaceuticals, Inc. v. Pfizer*, Inc., 395 F.3d 1324 (Fed. Cir. 2005), the court upheld the dismissal of a declaratory judgment action brought by a generic drug manufacturer. The plaintiff had brought suit solely on the grounds that it sought to make a generic version of a drug that the defendant had identified as covered by its patent in an FDA filing. *See id*. at 1327–30. The patentee had never threatened to sue the plaintiff or anyone else for patent infringement. *See id*. at 1332–33.

In *BP Chemicals Ltd. v. Union Carbide Corp*., 4 F.3d 975 (Fed. Cir. 1993), the parties were competitors in their efforts to license their competing, but similar, technologies for manufacturing chemicals. The plaintiff's technology utilized a "condensing mode," which the patentee had asserted to potential customers was covered by its patents. *See id*. at 976–77. The plaintiff filed a declaratory judgment action seeking a declaration of invalidity and that the "condensing mode" was not covered by the patents. *See id*. In upholding dismissal of the action, the Federal Circuit noted that (1) there had been no alleged acts of infringement of the patent, and (2) the defendant had not threatened to sue the plaintiff or its potential customers for patent infringement. *Id*. at 978–80. Thus, *neither* prong of the Federal Circuit's two prong test was satisfied.

In *Arrowhead*, 846 F.2d 731 (Fed. Cir. 1988), the Federal Circuit *upheld* jurisdiction in a declaratory judgment action even where there was no explicit threat of immediate litigation against the plaintiff. Specifically, the Federal Circuit held that the numerous statements and actions of the defendant, including a statement to the plaintiff's customer that the plaintiff's process infringed the defendant's patent, were sufficient to create a reasonable apprehension of suit. *See id*. at 733–34, 737–39.

16

Finally, the *New Kayak Pool* case, an unreported district court case cited by Milwaukee, is similarly off point. In *The New Kayak Pool*, the patentee sent a cease and desist letter to the supplier of the plaintiff's goods, alleging that these goods infringed two patents. *R&P Pools, Inc. v. The New Kayak Pool*, CV-0051E(M), 2001 U.S. Dist. LEXIS 1505, at * 1–2 (W.D.N.Y. Feb. 14, 2001). The supplier then faxed this letter to the plaintiff, a retailer of the goods, and the plaintiff filed a declaratory judgment action and sought a preliminary injunction. *See id*. Not by coincidence, the plaintiff filed the lawsuit shortly before distributing its 2001 Spring catalog. *See id*. at *2. The court held that the plaintiff did not fear suit, but instead brought the declaratory judgment action because the supplier itself would not challenge the patentee due to the fact that the parent corporation of the supplier had a close relationship with the patentee. *See id*. at *1–2 & *5–6. In short, knowing the supplier would not bring suit, the plaintiff sought an advisory opinion that the supplier's goods did or did not infringe the patents, so that the plaintiff could determine whether to include them in its Spring 2001 catalog. *See id*. at *5–6. Like the Federal Circuit cases cited by Milwaukee, the *New Kayak Pool* case is not relevant to the factual scenario in the present case.

In sum, none of the cases cited by Milwaukee supports its claim that Positec USA had no basis to fear a suit, and thus no standing to bring this action. In *Teva* and *BP Chemicals* there was simply no threat of litigation, and in *Arrowhead*, an indirect threat to a customer was found to *support* declaratory judgment jurisdiction. Finally, in the unreported case of *New Kayak Pool,* the court explicitly found that the plaintiff knew that it was not the target of the defendant's cease and desist letter, and sued solely to get an advisory opinion before deciding whether to include the target's products in its catalog.

C.    **Positec USA Has Standing to Bring this Declaratory Judgment Action Against Milwaukee**

Milwaukee's final argument is that Positec USA is somehow acting as a proxy for the interests of Positec China, and therefore has no independent standing to bring this action.  There is simply no support for Milwaukee's unfounded assertion.  Positec USA brought this action to confirm its own legal rights to continue importing and selling the WORX Circular Saw in the United States.  As the only Positec company engaging in such acts, it is actually Positec USA, and not any other Positec company, that has an immediate interest in determining its rights to sell the WORX Circular Saw without interference from the Patents-in-Suit.  *See supra* Part III.C.

## V.    CONCLUSION

For the foregoing reasons, Milwaukee's Motion to Dismiss should be denied.

18

Dated:  January 31, 2006                    FISH & RICHARDSON P.C.


                                            _/s/ Sean P. Hayes_____
                                            William J. Marsden, Jr. (#2247)
                                            Sean P. Hayes (#4413)
                                            919 N. Market Street
                                            Suite 1100
                                            Wilmington, DE  19801
                                            (302) 652-5070

                                            Alan D. Smith
                                            Lawrence K. Kolodney
                                            Benjamin D. Enerson
                                            225 Franklin Street
                                            Suite 3200
                                            Boston, MA  02110
                                            (617) 542-5070

                                            *Attorneys for Plaintiffs Positec USA Inc.*
                                            *(South Carolina) and Positec USA Inc. (North*
                                            *Carolina)*

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of January, 2006, I electronically filed

Plaintiffs' Opposition to Defendant's Motion to Dismiss for Lack of Subject Matter

Jurisdiction Pursuant to Federal Rule of Civil Procedure 12(b)(1) using CM/ECF which

will send notification of such filing to the following.  A copy will also be hand delivered.

Jack B. Blumenfeld, Esq.                    *Attorney for Defendant*
Morris, Nichols, Arsht & Tunnell            *Milwaukee Electric Tool Corporation*
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347


I also certify that on January 31, 2006, I mailed by United States Postal Service,

the above documents to the following non-registered participants:

Michael E. Husmann                          *Attorneys for Defendant*
Joseph T. Miotke                            *Milwaukee Electric Tool Corporation*
Michael Best & Friedrich LLP (Milwaukee)
100 East Wisconsin Avenue
Milwaukee, WI  53202-4108


                    */s/ Sean P. Hayes*
                    Sean P. Hayes (#4413)


21250809.doc